# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Sherrell Bolden,**

      **Plaintiff,**

**v.**                                                        **Case No. 18-2306-JWL**

**AT&T Services, Inc. and**
**Southwestern Bell Telephone Company**
**d/b/a AT&T,**

      **Defendants.**

## **MEMORANDUM & ORDER**

Plaintiff Sherrell Bolden filed this lawsuit against defendants asserting employment-related claims of race discrimination and retaliation in violation of 42 U.S.C. § 1981; sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and disability discrimination and retaliatory harassment in violation of the Americans with Disabilities Act, as amended by ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, 42 U.S.C. § 12101 et seq. This matter is presently before the court on defendants' motions to compel arbitration and to stay this case pending arbitration (docs. 13, 21). As set forth in more detail below, defendants' motions are granted.[1]

**I.**      **Standard**

---

[1] For purposes of this memorandum and order, the court will refer to defendants collectively as "AT&T."

The Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983))). However, whether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate. *Id.* (citing United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit. *Id.* (citing United Steelworkers, 363 U.S. at 582); *accord Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) ("Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated.").

The court applies state-law principles in deciding whether parties agreed to arbitrate. *Ragab*, 841 F.3d at 1137 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). When parties do not dispute the material facts on the question whether the parties agreed to arbitration, then a district court, while viewing the facts most favorable to the non-moving party, can decide as a matter of law whether the parties actually agreed to arbitrate. *See Howard*, 748 F.3d at 978. In such circumstances, the Act's "summary trial can look a lot like summary judgment." *Id.*; 9 U.S.C. § 4. But when material disputes of fact exist on the question whether the parties agreed to arbitrate, the Act requires a summary trial to resolve those disputes. *Howard*, 748 F.3d at 978.

**II.     Facts**

Consistent with the standard articulated above, the following facts are either uncontroverted or related in the light most favorable to plaintiff as the non-moving party. Plaintiff began her employment with defendants (collectively referred to as "AT&T") on November 4, 2013. On March 18, 2016, AT&T sent an email to plaintiff at her unique AT&T email address with the subject line "Action Required: Notice Regarding Arbitration Agreement." The email stated as follows:

> **Action Required: Notice Regarding Arbitration Agreement**
> AT&T has created an alternative process for resolving disputes between the company and employees. Under this process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes. Arbitration is more informal than a lawsuit in court, and may be faster.
>
> The decision on whether or not to participate is yours to make. To help you make your decision, it is very important for you to review the Management Arbitration Agreement linked to this email. It provides important information on the process and the types of disputes that are covered by the Agreement.
>
> Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard Time on Wednesday, May 18, 2016 to opt out -- that is, decline to participate in the arbitration process -- using the instructions below.
>
> If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.
>
> **Instructions for "Opting Out" of the Agreement**:
>
> **To opt out of the agreement, after you open the attached document, follow the link provided there to the site where you will be able to electronically register your decision to opt out.**
>
> Remember, the decision is yours. There are no adverse consequences for anyone opting out of the Management Arbitration Agreement. If, contrary to this

3

> assurance, you believe you have experienced any pressure or retaliation in connection with your decision, please contact the AT&T Hotline (888-871-2622).
>
> If you have any questions about the Agreement, please contact OneStop (Dial 1-888-722-1787, then speak "Employee Service Hotline").
>
> **Important: May 18, 2016 is the deadline to act if you do not wish to resolve disputes through arbitration.**
>
> **Access the Agreement by clicking the hyperlink below:**
>
> [Click here to review]

The "Click Here to Review" link, if utilized, would have redirected plaintiff to a page on AT&T's intranet containing the full text of the Agreement. Over the next several weeks, AT&T sent four additional "reminder" emails to plaintiff at her work email address. Those emails were sent on April 1, 2016; April 15, 2016; April 29, 2016; and May 13, 2016 and each one reminded plaintiff about the Agreement and the May 18, 2016 opt-out deadline. Each of these emails included a summary of the material terms of the Agreement, instructions on how to opt out of the program, the deadline for opting out, and a link to the full text of the Agreement. None of the five emails that were sent to plaintiff generated any type of automated reply indicating that the emails were not successfully delivered.

Plaintiff did not opt out of the Agreement. There is no evidence that plaintiff ever clicked the link directing her to the full text of the Agreement and she avers that she never saw the full agreement until AT&T's motion to compel arbitration. With respect to the five emails explaining the arbitration agreement and the opt-out process, plaintiff avers not that she did not receive the emails, but that she did not "focus" on those emails because during the time frame when AT&T sent the emails to her, she was inundated with emails concerning "massive site

closures" and she focused only on "essential" communications requiring an immediate response from her. Viewed in the light most favorable to plaintiff, then, plaintiff has no specific recollection of the five emails sent by AT&T concerning the arbitration agreement.

After AT&T terminated plaintiff's employment in June 2017, plaintiff filed this lawsuit. AT&T asserts that the filing was done in contravention of the Agreement which, by its terms, went into effect on May 18, 2016.

**III. Discussion**

Before resolving the key issue here—whether plaintiff accepted AT&T's offer to arbitrate any disputes arising out of her employment—the court briefly addresses two other issues raised in the parties' submissions.[2] First, plaintiff contends that no agreement to arbitrate exists because AT&T did not manifest to plaintiff its intent or willingness to be bound by the agreement. *See Unified Sch. Dist. No. 446 v. Sandoval*, 295 Kan. 278, 289 (2012) (formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration; each party must accept the essential terms of the contract and outwardly communicate the acceptance in a way reasonably intended to be understood as such). In support of this argument, plaintiff highlights that the agreement is not signed by a company representative. This argument is rejected. The arbitration agreement does not require the parties' signatures for execution and the plain language of the agreement unequivocally provides that AT&T is required to submit employment disputes to arbitration and is bound by the terms

---

[2] Two issues are not disputed. The parties agree that Kansas law governs this case and plaintiff agrees that if a valid agreement to arbitrate exists, then her claims are covered by it.

of the agreement. In fact, the agreement expressly recognizes the "parties' mutual intent to create a binding agreement to arbitrate their disputes." Clearly, AT&T is bound by the agreement. *Compare Huckaba v. Ref-Chem., L.P.*, 892 F.3d 686, 689-90 (5th Cir. 2018) (where arbitration agreement contained statement that "by signing this agreement the parties are giving up any right they may have to sue each other" and contained a signature block for employer, employer did not meet its burden of showing that it intended to be bound in absence of signed agreement) *with Uszak v. AT&T Mobility Services LLC*, 658 Fed. Appx. 758, 764 (6th Cir. 2016) (finding that the MAA "binds both parties to arbitrate" and that manifestation of mutual assent existed) and *Durkin v. CIGNA Prop. & Cas. Corp.*, 942 F. Supp. 481, 488 (D. Kan. 1997) (manifestation of mutual assent existed where arbitration policy language indicated that the employer was also bound to submit disputes to arbitration).

Second, plaintiff contends that her continued employment is not sufficient consideration for the agreement to arbitrate. As AT&T emphasizes, however, mutual promises to arbitrate contained in an arbitration agreement constitute sufficient consideration for that agreement. *See Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 Fed. Appx. 812, 819-20 (10th Cir. Mar. 14, 2008) ("In the employment context, a reciprocal agreement to arbitrate can provide the requisite consideration so long as the employer does not retain the unilateral authority to terminate or modify the arbitration agreement once the employee's claim has accrued."). Plaintiff does not suggest that the agreement gives AT&T the unilateral authority to terminate or modify the agreement. Plaintiff, however, contends that the parties' mutual promises to arbitrate are nonetheless illusory because the parties could not promise to give up something (*i.e..,* the right to litigate their disputes in a judicial forum) that they did not possess at

6

the time the promises were made. In other words, plaintiff asserts that she could not waive her right to bring a dispute in a judicial forum before any dispute even existed. Plaintiff directs the court to no cases suggesting that an employee cannot prospectively waive the right to trial by jury through an arbitration agreement. Plaintiff's lack of authority is not at all surprising given that the waiver of the prospective right to a judicial forum and a jury trial is the very premise of the Federal Arbitration Act. Clearly, the law permits an individual through an arbitration agreement to prospectively waive his or her right to litigate disputes in a judicial forum and, because the law so permits, courts routinely enforce pre-dispute mandatory arbitration agreements. In short, the agreement is supported by adequate consideration.

The court turns, then, to the key issue raised by the undisputed facts—whether plaintiff agreed to AT&T's arbitration program. In her response to the motion to compel arbitration, plaintiff contends that she did not accept AT&T's offer and, in fact, could not have accepted that offer because she did not know it existed. As will be explained below, even assuming that plaintiff did not read any of the five emails sent to her that contained the basic terms of the offer, AT&T provided adequate notice of the offer to plaintiff and a meaningful opportunity to reject that offer. Thus, by failing to opt out of the arbitration program, plaintiff bound herself to the terms of the arbitration agreement and must arbitrate her claims against defendant.

In support of her argument that she cannot be deemed to have accepted AT&T's offer, plaintiff relies exclusively on this court's opinion in *SmartText Corporation v. Interland, Inc.*, 296 F. Supp. 2d 1257 (D. Kan. 2003). That case involved an offer made by a web hosting company to a customer that it had acquired when it purchased the accounts of another web hosting company. *Id*. at 1258-59. In that case, the web hosting company sent an email to the

customer indicating that it intended to migrate the customer's websites to a new server and that the customer needed to review the website on the new server and click "Accept" to indicate that the site was acceptable or click "Decline" to indicate that issues existed with the website that required resolution. *Id*. at 1259-60. The email also stated that if the customer did not respond to the email within 5 days, the web hosting company would assume that the site was acceptable and that the customer agreed to the new web hosting plan plus the company's Terms of Service, which included a mandatory arbitration provision. *Id*. at 1260. The customer did not click "Accept" or "Decline" or respond to the email in any other manner. *Id*. After 5 days, the web hosting company migrated the customer's website to the new server and provided web hosting services subject to its Terms of Service. *Id*.

The customer filed a lawsuit stemming from issues relating to the operation of the website and the web hosting company moved to compel arbitration. *Id*. at 1261-62. This court determined that a trial was required on whether the parties agreed to arbitrate because, among other things, factual issues existed as to whether the customer, in failing to respond to the email, intended to accept the offer contained in that email. *Id*. at 1265-66. In doing so, the court relied in part on subsection 1(b) of the Restatement (Second) of Contracts § 69, which states that silence operates as acceptance only where the offeree, in remaining silent, intends his or her silence to constitute acceptance. *Id*.

Plaintiff relies on *SmartText* to suggest that she never intended to accept AT&T's offer and that her failure to click the button acknowledging that she read the MAA and her failure to otherwise respond to AT&T's emails indicate that she did not accept the offer or, at a minimum, require a trial on that issue. The court disagrees. The primary issue in *SmartText* was the extent

8

to which the customer had a "reasonable opportunity to reject" the services of the web hosting company within the meaning of subsection 1(a) of § 69 of the Restatement (Second) of Contracts in light of the nature of the specific relationship between the parties in that case. *See id.* at 1263-65. Here, plaintiff's claims stem from an employment relationship with AT&T and, in such circumstances, many courts have not even applied the Restatement. *See, e.g., Davis v. Macy's Retail Holdings, Inc.*, 2018 WL 4516668, at *4-5 (D. Conn. Sept. 19, 2018) (rejecting the employee's reliance on subsection 1(b) of the Restatement (Second) of Contracts § 69 and concluding that employee's failure to opt out of employment arbitration program after receiving notice of program is sufficient conduct to signify acceptance) (collecting cases). This is true even where, as here, the employee asserts that he or she never saw the offer from the employer. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 2018 WL 2130434, at *2 (N.D. Ill. May 9, 2018) (employer could reasonably construe employee's silence as acceptance when the employer clearly communicated arbitration program to employee and provided a means to opt out; employee's failure to recall contents of email—as opposed to failure to receive email—did not create factual dispute). Moreover, the court finds the results of those cases consistent with subsection 1(c) of the Restatement, which provides that an offeree's silence operates as acceptance where "because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept."

Decisions from the Second and Seventh Circuit Courts of Appeal are particularly instructive. In *Manigault v Macy's East, LLC*, for example, the Second Circuit held that where an employee received the arbitration program information, that employee was compelled to arbitrate her disputes despite the fact that she never acknowledged receipt of the program

9

documents. 318 Fed. Appx. 6, 8 (2d Cir. 2009). In that case, Macy's submitted evidence that it mailed the documents regarding the arbitration program to the plaintiff at the address specified in its internal personnel database, that each package contained a return address, and that the company's records show that the mailing to plaintiff was not returned as undeliverable. *Id.* at *7. In the face of such evidence, the employee's conclusory denial of receipt of the mailing was insufficient to rebut the presumption that she received the mailing and the Circuit held that the evidence of receipt was sufficient to demonstrate an agreement to arbitrate. *Id.* at *7-8.

In *Weiss v. Macy's Retail Holdings, Inc.*, ___ Fed. Appx. ___, 2018 WL 3409143 (2d Cir. 2018), the Second Circuit reiterated that if an employee receives documents from an employer concerning an arbitration program and has an opportunity to opt out of the program but declines to do so, then the employee will be bound to arbitrate his or her disputes even if that employee does not review the documents. *Id.* at *2. But in that case, the Second Circuit found a contested factual issue on whether the employee had received the documents because the employee offered more than a "mere denial of receipt." *Id.* at *3. Rather, the employee offered evidence that his family, in light of the employee's learning disability, utilized a regular procedure for reviewing with him mail that he received and he asserted that the mailing from his employer did not arrive and go through that process. *Id.* Because the employee's evidence was sufficient to rebut the presumption that the mailing was received, the Circuit remanded the case for a determination of whether the employee received the documents. *Id.*

Similarly, the Seventh Circuit has held that an employee's acceptance of an offer to arbitrate disputes turns on whether the employee receives the documents explaining the program—not on whether the employee reads or acknowledges those documents. In *Tinder v.*

10

*Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002), the Seventh Circuit held that the district court correctly compelled arbitration in the employment context where the employee did not recall receiving or seeing the arbitration brochure that the employer had inserted in the envelope with each employee's paycheck. *Id.* at 730, 732. The employer submitted evidence that it had delivered the brochure as a "payroll stuffer" with each paycheck and that the employee received her salary by check rather than by direct deposit. *Id.* at 732. Despite the employee's evidence that she did "not recall seeing or reviewing" the brochure, the Circuit held that a contract was formed based on the undisputed evidence that the brochure was distributed to her. *Id.* at 735-36 ("The district court therefore correctly compelled arbitration without a trial on whether a contract was formed.").

These decisions demonstrate that the key issue in the factual context presented here is whether the employee received the arbitration documents. AT&T has ample evidence of plaintiff's receipt of the arbitration information. It has submitted affidavits demonstrating that five emails clearly explaining the program and the opt-out procedure were sent to plaintiff at her unique AT&T email address and that none of the five emails that were sent to plaintiff generated any type of automated reply indicating that the emails were not successfully delivered. Plaintiff does not challenge this evidence and does not suggest that she did not receive the emails. At most, she contends that she did not read those emails. Thus, the facts of this case are closely analogous to the facts in *Tinder* and the court is persuaded by the Seventh Circuit's decision in that case. In the absence of any case law indicating that Kansas courts would hold otherwise, the court concludes that plaintiff, an employee of AT&T, had sufficient notice of the arbitration program and a reasonable opportunity to opt out of the program such that AT&T could

11

reasonably construe her silence as an agreement to arbitrate her disputes.  *See Kenney v. Hallmark Cards, Inc.*, 2009 WL 102682, at *(D. Kan. Jan. 7. 2009) (following *Tinder* and concluding under Kansas law that employee could not avoid arbitration by showing that she was unaware of program; in the absence of evidence that she did not receive information that was mailed to her, employee was bound to arbitrate claims).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants AT&T Services, Inc.'s and Southwestern Bell Telephone Company's motions to compel arbitration (docs. 13, 21) are **granted.**  The parties are directed to proceed to arbitration of plaintiff's claims.  The court will stay the judicial proceedings in this case pending completion of the arbitration process.  Counsel for the parties are directed to report to the court in writing no later than **Monday, April 15, 2019** concerning the status of that arbitration in the event that it has not been terminated earlier.  Failure to so report will lead to dismissal of this case as to these parties for lack of prosecution.

**IT IS SO ORDERED.**

Dated this 10th  day of October, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge